IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MARY L. FIELDER, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>)<br>    Defendant. ) | <br><br><br><br>CIVIL ACTION NO.: 3: 04cv1043-VPM<br>[WO] |

**MEMORANDUM OPINION AND ORDER**

Claimant Mary L. Fielder ["Fielder"] filed this action seeking review of a final decision of the defendant ["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) (2000). Upon review of the record and the briefs submitted by the parties, the court concludes that the Commissioner's decision should be affirmed.

**I.   FACTS AND PROCEDURAL HISTORY**

Fielder contends that she became disabled on 1 September 2000 due to "chronic foot pain, bilateral carpal tunnel syndrome, hypertension, and obesity" (Doc. # 12, p. 1).[1] She has a tenth grade education and, despite having no high school diploma or equivalency thereof, she is a certified nursing assistant (R. 228). Prior to her onset date, she worked as a nurse's aide in a nursing home, a milking machine operator at a dairy, a wire harness assembler, a private home healthcare sitter, and a laborer for a plant nursery (R. 229-234).

---

[1] Fielder originally listed 17 October 1998 as her onset date but amended her application at the administrative hearing (R. 224-227).

Fielder's applications for Disability Insurance Benefits and Supplemental Security Income were denied initially, and Fielder requested a hearing before an Administrative Law Judge (R. 39-44). After the hearing, ALJ Steven L. Carnes found that Fielder was not disabled (R. 16-33). The Social Security Administration Appeals Council denied Fielder's request to review the ALJ's decision, which consequently became the final decision of the Commissioner, and Fielder filed this timely lawsuit (Doc. # 1).

## II.   STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." **Miles v. Chater**, 84 F. 3d 1397, 1400 (11th Cir. 1996) (citing **Bloodsworth v. Heckler**, 703 F.2d 1233, 1239 (11th Cir. 1983)). The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," **Kelley v. Apfel**, 185 F.3d 1211 (11th Cir. 1999) (citing **Graham v. Apfel**, 129 F. 3d 1420, 1422 (11th Cir. 1997)).[2]

This is true despite the existence of substantial evidence "contrary to the findings of

---

[2]In **Graham v. Apfel**, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  See **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

the ALJ." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles*, 84 F.3d at 1400 (citations omitted).

### III.   DISCUSSION

*A.   Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must prove that she is disabled, which means that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2004); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a) (2004).

The regulations governing disability determinations provide a five-step sequential evaluation process that the ALJ must follow to determine whether a claimant has proven that she is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also* **Ambers v. Heckler**, 736 F.2d 1467, 1469 (11th Cir. 1984); **Williams v. Barnhart**, 186 F. Supp. 2d 1192, 1195 (M.D. Ala. 2002).

If the claimant is not currently engaged in substantial gainful activity, the ALJ must determine whether she suffers from a severe impairment (i.e., a medically determinable condition that significantly limits the claimant's ability to perform basic work-related

activities) that has lasted or is expected to last 12 months or more. §§ 404.1509, 416.909, 404.1520(a)(4)(I)-(ii), 416.920(a)(4)(I)-(ii). If so, and the impairment(s) is of such severity as to meet or medically equal a condition described in the SSA's "Listing of Impairments," then the claimant will be found to be disabled. §§ 404.1520(a)(4)(iii); 404, subpt. P, app. 1; 416.920(a)(4)(iii).

If the claimant's severe impairment does not automatically qualify her for disability benefits, the ALJ must then assess her residual functional capacity ["RFC"], which represents "the most [a claimant] can still do despite [her] limitations." §§ 404.1545(a), 416.945(a). Considering her RFC, the ALJ must determine whether the claimant is able to perform the physical and mental demands of her past relevant work. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If not, the ALJ must determine whether, considering her RFC, age, education, and past work experience, the claimant is capable of performing other jobs available in significant numbers in the national economy. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c).

### B.   *Application of the Standard: The ALJ's Findings*

After accurately setting forth the legal standards and meticulously discussing the evidence in the record, the ALJ made the following findings:

> 1. The claimant met the insured status requirements of the Social Security Act as of September 1, 2000 and will continue to meet them through December 31, 2003.
>
> 2. The claimant has not engaged in substantial gainful

       activity since September 1, 2000.

3. The claimant has "severe" impairments, including blindness in the right eye, bilateral carpal tunnel syndrome, musculoskeletal pain, obesity, hypertension, and non-insulin dependent diabetes mellitus.

4. The claimant's impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant's allegations of pain and functional limitations are not credible.

6. The claimant retains the residual functional capacity to perform a range of light work activity with the following limitations: (a) occasional use of her hands for simple grasping and fine manipulation; (b) non-frequent use of her hands for pushing and pulling of arm controls; © non-frequently use of her legs for pushing and pulling of leg controls; (d) non-frequent climbing, balancing, stooping, kneeling, crouching, crawling, and reaching; (e) occasional work around unprotected heights, operating motor vehicle equipment; (f) working amidst marked changes in temperature and humidity and moving machinery; (g) blindness in the right eye, resulting in an inability to perform a job requiring binocular vision or acute visual acuity; and (h) accommodation of a moderate degree of pain.

7. The claimant can perform her past relevant work as a Sitter.

8. The claimant is 53 years old, which is defined as an individual closely approaching advanced age. 20 C.F.R. 404.1563 and 416.963.

9. The claimant has a tenth grade education, which is defined as limited. 20 C.F.R. 404.1564 and 416.964.

10. The claimant has acquired work skills transferable to other jobs within the light residual functional capacity set out above.

11. If the claimant had the exertional capacity to perform the full range of light work, 20 CFR [sic] 404.1569, 20 CFR 416.969, and Medical-Vocational Rule 202.12, 20 CFR Part 404, Table No. 2 to Appendix 2 of Subpart P would direct a conclusion that the claimant is "not disabled."

12. Although the claimant's additional non-exertional limitations do not allow her to perform the full range of light work, using the above-cited rule as a framework for decision-making and the vocational expert's testimony, there are a significant number of jobs in the regional or national economies which the claimant could perform. Examples of such jobs are: Machine Tender with 1,300 jobs regionally and 63,000 jobs nationally; Machine Packer with 1,200 jobs regionally and 60,000 jobs nationally; and Machine Feeder/Offbearer with 1,500 jobs regionally and 75,000 jobs nationally.

13. The claimant has not been under a disability as defined in the Social Security Act, as alleged.

(R. 32). Thus, Fielder failed at step four because, after determining her RFC, the ALJ held that she could return to past relevant work. *Id*. In addition, he found that she could perform other jobs available in significant numbers locally and nationally. *Id*.

Fielder disagrees and contends generally that the ALJ's decision is not supported by substantial evidence in the record. Specifically, she contends that the he did not properly evaluate her subjective complaints.

C.	*Fielder's Subjective Complaints*

Fielder contends that the ALJ's evaluation of her subjective complaints was erroneous because:

- he failed to elicit any meaningful testimony as to her level of pain;

- despite her specific complaints, he failed to address her back pain at the hearing;

- he did not give Fielder an opportunity to answer his questions;

- based on her answers to questions by her own attorney, "it should have become abundantly clear to the ALJ that [Fielder] lacked the understanding of the term 'moderate' to properly rate [sic] her pain level"; and

- "[d]iagnostic testing has confirmed the extent of her bilateral carpal tunnel syndrome and would certainly support a finding of more than a moderate level of pain in that area."

Before discussing the Eleventh Circuit's standards for evaluating subjective complaints, it is important to note that Fielder fails to provide factual support for most of her arguments regarding the hearing itself. The hearing transcript indicates that, while being questioned by both the ALJ and her attorney, Fielder had ample opportunity to discuss her pain in as detailed a fashion as she chose. While the ALJ appears to have steered Fielder to answer the questions he asked, Fielder has pointed to no legal authority suggesting that he was required to allow her to respond evasively or incoherently. Nothing in the transcript evidences wrongdoing by the ALJ, and, although a written transcript may be difficult to

interpret contextually, he appears to have utilized only the forcefulness necessary to keep Fielder on point.

In addition, Fielder's contention that ALJ should have known that she didn't understand the meaning of the word "moderate" is speculative, conclusory, and disingenuous in light of Fielder's attorney's failure to explore more fully her apparent perception of her client's lack of understanding. Certainly, Fielder's answers could have been clearer, but this says less about the ALJ's conduct than about her counsel's efforts to prepare her for the hearing or to repair responses that were palpably incomplete or inadequately self-serving. The ALJ's duty to develop the record does not require him to assume representation of a party, i.e., to extract information by means the character of which is best left to the litigants.

The only matters for the court to decide are whether the ALJ's evaluation of Fielder's subjective complaints followed the standards set by the Eleventh Circuit and whether his finding that she suffered only moderate pain was supported by substantial evidence in the record. The court answers both questions in the affirmative.

The two-part test established by the Court of Appeals for the purpose of evaluating a claimant's subjective complaints requires the Commissioner to determine first whether evidence of an underlying medical condition exists and, if so, whether either "objective medical evidence . . . confirms the severity of the alleged pain arising from that condition or . . . the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." ***Holt v. Sullivan***, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529, 416.929. No weight need be given to

subjective complaints that do not satisfy the pain standard. *See*, *e.g.*, **Butler v. Barnhart**, 347 F. Supp. 2d 1116, 1123 (M.D. Ala. 2003).

The administrative documents related to Fielder's pre-hearing applications indicate that she complained that muscle spasms in her back and swelling and cramping in her feet precluded her from standing or sitting very long (R. 67, 70, 77). She also noted headaches and painful tingling and swelling in her left arm (R. 70, 78).

The ALJ described Fielder's relevant testimony as follows:

> Her medical problems include carpal tunnel syndrome and muscle spasms and pain in the legs and feet. Her pain is sharp, moderately intense, lasts two or three days, and occurs three or four times per month. The muscles in her legs hurt. Walking causes pain . . . She has frequent difficulties gripping and drops things. She is unable to button a blouse. She frequently experiences numbness in the fingers . . . She has frequent problems handling, gripping, and manipulating with the left hand, and cannot feel with the left hand.

(R. 20-21).

Noting that Fielder suffered from impairments that could give rise to pain, the ALJ concluded nonetheless that the objective medical evidence simply did not support a finding that the pain caused by any or all of her conditions was disabling. In light of the ALJ's accurate, detailed discussion of the medical evidence, the court finds it unnecessary to repeat a review of the medical record, which fully supports his conclusion.

Notably, although the ALJ discredited Fielder's testimony, he nevertheless found that she experienced a moderate degree of pain, thus adopting Fielder's own pain assessment. This, of course, begs the question what, exactly, is being challenged beyond the ALJ's

9

conduct of the hearing, which the court has already addressed. Rather than point to any real errors, Fielder instead quibbles with his conclusion as it pertains to her carpal tunnel syndrome.

Interestingly, when asked by the ALJ whether Fielder's subjective testimony, accepted as completely credible, would preclude her from working, the vocational expert responded in the negative and listed several jobs "consistent with [her own] assessment of her RFC" (R. 256).

A thorough review of the entire record leads the court to conclude that the ALJ applied the appropriate legal standards, and his findings are strongly supported by substantial evidence.

## IV.   CONCLUSION

Therefore, it is hereby

ORDERED that the final decision of the Commissioner be and is AFFIRMED.

DONE this 4th day of January, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE